UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DARNELL MURPHY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:24CV1433 HEA |
| ) | |
| BUREAU INVESTMENTS ) | |
| GROUP PORTFOLIO, LLC, ) | |
| ) | |
| Defendant. ) | |

**OPINION, MEMORANDUM AND ORDER**

This matter is before the Court on Cross Motions for Summary Judgment, [Doc. No.'s 56 and 62]. For the reasons set forth below, Defendant's Cross Motion will be granted.

**Facts and Background**

On April 1, 2022, Plaintiff entered into a Borrower Agreement (the "Agreement") with Blue Ridge Bank ("BRB") and Upgrade, Inc. ("UI"), as servicer, to secure a loan for $6,000.00. Plaintiff electronically signed and delivered the Loan Agreement and Promissory Note (the "Note") to Blue Ridge Bank, evidencing the $6,000.00 loan. Plaintiff was required to make several monthly installment payments beginning on May 1, 2022.

The terms of the Agreement and Note authorized BRB and UI to assign or transfer all or a portion of the Note and the related documents to a third party or an affiliate and their rights under the Note inured to the benefit of their successors and assigns and Plaintiff's obligations under the Note are binding upon his heirs, personal representatives and permitted assigns.

On July 5, 2023, UI sent Murphy a "Past-Due Notice" informing him that $770.88 on his loan was 95 days past due and would be charged off and reported to Credit Reporting Agencies unless arrangements were made.

On August 16, 2023, Plaintiff's loan was sold, transferred, or otherwise assigned to Bureaus Investment Group Portfolio No. 15, LLC. Plaintiff was made aware of the sale and assignment of his loan from UI to Defendant pursuant to the "Goodbye Letter" UI mailed to Plaintiff on or about August 27, 2023.

Shortly after BIG 15 purchased Plaintiff's loan in August 2023, The Bureaus, Inc. ("TBI") reported an "open collection account" to the Credit Reporting Agencies and hired independent contractors/debt collection agencies ("Collectors") to attempt to collect the amounts due and owing from Plaintiff. The first of Defendant's Collectors, Superlative RM ("SRM"), emailed Plaintiff on September 8, 2023, informing him that it was attempting to collect the debt on BIG 15's behalf in the amount of $6,052.18. Between November 2, 2023, and December 22, 2023, SRM sent Plaintiff three follow-up emails encouraging him to

make arrangements to resolve his debt; the last email offered a reduced amount of $3,570.79.

On January 10, 2024, Defendant's second Collector, Asset Recovery Solutions, LLC ("ARS"), sent Plaintiff a letter stating that Plaintiff had until February 22, 2024, to dispute all or part of the debt. Between January 10, 2024 and February 20, 2024, Plaintiff sent ARS a letter disputing his debt and asking for verification. In response, ARS ceased collection activity and on February 20, 2024, verified Plaintiff's debt by providing him with the names of the original and current creditors, current balance, and copies of the Credit Profile Authorization Agreement, ACH Authorization Agreement, E-Sign Act Consent Agreement, Truth in Lending Act Disclosure, electronically signed Note, Payment History, and Privacy Notice Policy.

Defendant also began reporting Plaintiff's account as "disputed" to the Credit Reporting Agencies beginning with the March 16, 2024, reporting cycle through as late as November 17, 2024.

On July 16, 2024, Defendant's third Collector, First National Collection Bureau, Inc. ("FNCB"), received another dispute/validation request from Plaintiff. In response, FNCB ceased collection activities to investigate the dispute, and on July 18, 2024, FNCB verified Plaintiff's debt by providing him with the names of

3

the original and current creditors, current balance, and copies of the Truth in Lending Act Disclosure, electronically signed Note, and Payment History.

On August 1, 2024, FNCB received another letter from Plaintiff disputing his debt and requesting verification. In response, FNCB referred Plaintiff to the documents included with the July 18, 2024, letter verify his debt.

On August 8, 2024, Plaintiff sent letters to the Federal Trade Commission, Missouri Attorney General's Office, and the Better Business Bureau ("BBB") complaining that Defendant failed to prove the loan account belonged to him and that if Defendant failed to provide him with any viable evidence bearing his wet ink signature, showing the account is being reported accurately he would bring suit against the collecting company as well as the original creditor for all applicable damages, as well as for statutory penalties provided under the FDCPA and FCRA. 20. In its responses to the Missouri Attorney General's Office and the BBB, Defendant explained that the account was originally an Upgrade, Inc. on behalf of Blue Ridge Bank account opened on 04/01/2022 in the amount of $6,000.00. The last payment on the account was in the amount of $187.72 on 03/01/2023. The account was charged off on 07/29/2023 in the amount of $6,052.18. Defendant further specified that producing a wet ink signature would be impossible because Plaintiff's account was opened on the internet; therefore, an E-signature was captured. A copy of the agreements and notices provided to the consumer and to

4

Defendant by Upgrade, Inc on behalf of Blue Ridge Bank were attached to the response. Defendant also stated that upon notice of the dispute in February 2024, The Bureaus, Inc updated its records and subsequently notified the credit reporting companies that the account was disputed, as is required by the Fair Credit Reporting Act and that upon receipt of the Missouri Attorney General complaint in August 2024, it updated its records to restrict communication attempts with Darnell Murphy. This dispute had been determined to be duplicative. It was substantially the same as a dispute previously submitted by the consumer for which it already satisfied validation requirements and did not include any material information to support the dispute, its investigation found the information disputed to be accurate.

On October 24, 2024, Plaintiff filed his Complaint alleging Defendant violated the Fair Debt Collection Practices Act ("FDCPA") 15 U.S.C. § 1692, et seq. when it sent letters to Plaintiff regarding the default on his debt, its intent to collect that debt, reporting Plaintiff's default to the Credit Reporting Agencies while the account was disputed, and Defendant's purported failure to establish its ownership of Plaintiff's debt.

## Summary Judgment Standard

"[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show

5

that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A party moving for summary judgment bears the burden of demonstrating that no genuine issue exists as to any material fact. *Id.* at 323. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "The moving party can satisfy its burden in either of two ways: it can produce evidence negating an essential element of the nonmoving party's case, or it can show that the nonmoving party does not have enough evidence of an essential element of its claim to carry its ultimate burden of persuasion at trial." *Bedford v. Doe*, 880 F.3d 993, 996 (8th Cir. 2018) (citing *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000)).

When the moving party meets this burden, "the adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Liberty Lobby, Inc.*, 477 U.S. at 250 (quoting Fed. R. Civ. P. 56(e)). The "party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id*. at 256 (quoting Fed. R. Civ. P. 56(e)). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in

6

his favor." *Id*. at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)).

In addition to the requirements of Rule 56, this Court's Local Rule 4.01(E) addresses a non-moving party's duties in opposing a moving party's Statement of Material Facts:

> Every memorandum in opposition must be accompanied by a document titled Response to Statement of Material Facts, which must be separately filed using the filing event "Response to Statement of Material Facts." The Response must set forth each relevant fact as to which the party contends a genuine issue exists. The facts in dispute shall be set forth with specific citation(s) to the record, where available, upon which the opposing party relies. The opposing party also shall note for all disputed facts the paragraph number from the moving party's Statement of Uncontroverted Material Facts. All matters set forth in the moving party's Statement of Uncontroverted Material Facts shall be deemed admitted for purposes of summary judgment unless specifically controverted by the opposing party.

E.D. Mo. L.R. 4.01(E).

## Discussion

The FDCPA, 15 U.S.C. § 1692 et seq., was enacted "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). The FDCPA regulates the collection of "debts" by "debt collectors" by regulating the number and type of contacts a debt collector may make with a debtor. In order to establish civil liability under the

7

FDCPA, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from a consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; [and] (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Zelkowitz v. Avant, LLC*, No. 25-CV-850 (SRN/DLM), 2025 WL 3237906, at *2 (D. Minn. Nov. 20, 2025); *Kowouto v. Jellum Law, P.A.*, 672 F.Supp.3d 699, 702 (D. Minn. 2023); *Mayfield v. Portfolio Recovery Assocs., LLC*, 553 F. Supp. 3d 676, 683 (D. Minn. 2021).

Defendant has set forth detailed evidence establishing its right to collect the debt. The uncontroverted evidence includes the promissory note, the E-Signature agreement, a clear chain of title, valid assignments establishing Defendant's right to collect the debt. Likewise, Defendant properly validated the debt each time Plaintiff sought validation and ceased collection efforts when Plaintiff disputed the debt. Indeed, Plaintiff admits the collection procedures were proper by attaching to his motion for summary judgement the detailed facts of the procedures that occurred with regard to the collection of the amount due under the loan.

In contrast, Plaintiff has presented no evidence supporting his allegations that "the defendant has engaged in an act or omission prohibited by the FDCPA." *Kowouto*, 672 F.Supp.3d at 702. "Impermissible practices" for purposes of the FDCPA "include harassing, oppressive or abusive conduct; false, deceptive or misleading representations; and unfair or unconscionable collection methods."

8

*Freyermuth v. Credit Bureau Services, Inc.*, 248 F.3d 767, 771 (8th Cir. 2001) (citing 15 U.S.C. § 1692d-f). Plaintiff's completely conclusory accusations fail to rise to the level of establishing a genuine dispute as to any material fact. Without more, no reasonable jury could find that Defendant violated the FDCPA. Indeed, the meticulous steps taken regarding Plaintiff's loan unequivocally establish the validity of Defendant's actions. The documents establish that plaintiff's account was validly sold pursuant to the terms of the loan agreement. Because the sale was valid, Defendant did not violate the FDCPA in attempting to collect on Plaintiff's debt. *Gallamore v. Portfolio Recovery Assocs., LLC*, No. 1:24-CV-00148-SNLJ, 2025 WL 1809794, at *2 (E.D. Mo. July 1, 2025)

## Conclusion

Based upon the foregoing, the undisputed material facts establish Plaintiff's claims of violations of the FDCPA are without merit.

Accordingly

**IT IS HEREBY ORDERED** that Defendant's Cross Motion for Summary Judgment, [Doc. No. 56], is **GRANTED.**

An appropriate Judgment shall accompany this Opinion, Memorandum, and

Order.

Dated this 9th day of January, 2026.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE